UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ADAM MICHAEL BARFIELD, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 4:20-cv-01197-ACA |
| } | |
| ANDREW SAUL, Commissioner of } | |
| Social Security, } | |
| } | |
| Defendant. } | |

# MEMORANDUM OPINION

Plaintiff Adam Barfield ("Mr. Barfield") appeals the Social Security Commissioner's ("Commissioner") denial of his claim for SSDI benefits and SSI benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I. PROCEDURAL HISTORY

Mr. Barfield applied for SSDI benefits and SSI benefits on May 18, 2018. Mr. Barfield's alleged disability onset date was 01/04/16.[1] The Social Security Administration initially denied Ms. Sanders' application. (R. 104-117).

---

[1] Mr. Barfield's initial alleged onset date was March 5, 2013. (R. 210). At the hearing, Mr. Barfield formally requested another amendment to change the onset date to January 1, 2016. (R. 37–38).

Mr. Barfield appeared with his attorney at a hearing before an Administrative Law Judge ("ALJ") on 10/18/2019. (R. 32-56). The ALJ issued an unfavorable decision on 11/15/2019. (R. 14-31). The Appeals Council declined Mr. Barfield's request for review. (R. 1–8). The Appeals Council's denial of review makes the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C § 405(g).

## II.   STANDARD OF REVIEW

The court has a narrow role in reviewing claims brought under the Social Security Act. The court reviews the application of legal principles de novo and must reverse if the Commissioner incorrectly applies these principles. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991). But the court reviews all findings of fact under the substantial evidence standard. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). So long as a "reasonable mind might accept [such evidence] as adequate to support a conclusion," the court will affirm the ALJ's decision. *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 217 (1938). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for the ALJ's. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). But the court must still "scrutinize the record as a whole . . . to determine if the decision reached is . . . supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, the ALJ follows a five-step sequential evaluation process:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In the present case, the ALJ found that Mr. Barfield was not engaged in substantial gainful activity and that he had the following severe impairments: cervical disc disease, cervicocranial syndrome, segmental and somatic dysfunction of thoracic region, and headaches.  (R. 19).  The ALJ classified Mr. Barfield's depression and panic disorder as non-severe impairments.  (R. 20).  The ALJ concluded that Mr. Barfield did not have an impairment or combination of impairments that met or equaled a listed impairment.  (R. 21-22).

After considering the evidence on the record, the ALJ determined that Mr. Barfield had the residual functional capacity to perform light work with the following limitations:

can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb robes, ladders, or scaffolds; frequently reach in all directions; frequently handle, finger, and feel with both upper extremities; should never be exposed to unprotected heights; can tolerate occasional exposure to extreme heat, extreme cold, and vibration; can tolerate a moderate noise intensity level as defined in the DOT/SCO; and can tolerate occasional exposure to light as bright as sunlight."

(R. 22).

In making this determination, the ALJ looked at the opinions of Dr. Iyer, Dr. Khan, Dr. Shehi, and Dr. Amason as well as notes and evaluations from doctor visits. (R. 23-25). Mr. Barfield's treatment records and diagnostic imaging did "not indicate disability functional limitations arising from his impairments." (R. 23). The ALJ accepted Mr. Barfield's testimony about the intensity, persistence, and limiting effects of his symptoms only to the extent that his statements were consistent with the record. (R. 23).

The ALJ then relied on a vocational expert's testimony to conclude that Mr. Barfield could perform both his past relevant work as a cook and other jobs in the national economy. (R. 25-26). Accordingly, the ALJ determined that Mr. Barfield was not under a disability as defined by the Social Security Act. (R-26).

## IV.   DISCUSSION

Mr. Barfield argues that the court should reverse and remand the Commissioner's decision for three reasons: (1) the ALJ improperly evaluated and weighed Dr. Khan's medical opinion; (2) the ALJ did not base her finding that

Mr. Barfield could perform his past work on substantial evidence; and (3) the ALJ did not base her denial of benefits on substantial evidence. (Doc. 10 at 2). The court addresses each issue in turn.

    A.    *Evaluation of Dr. Khan's Testimony*

Dr. Khan, a one-time examiner, found that Mr. Barfield had "several medical abilities . . . affecting [his] ability to function." (R. 421). Dr. Khan diagnosed Mr. Barfield with chronic neck pain, rectal bleeding, and chronic daily headaches. (R. 421, 423). The ALJ found Dr. Khan's diagnoses of degenerative disc disease and chronic neck pain "somewhat persuasive." (R. 24). The ALJ believed that Dr. Iyer's and Dr. Amason's opinions supported these diagnoses and that the diagnoses were also consistent with the record. (*Id.*).

Mr. Barfield argues that the ALJ misinterpreted Dr. Khan's report and omitted consideration of Mr. Barfield's headaches and rectal bleeding. (Doc. 10 at 14). The record belies Mr. Barfield's argument. The ALJ identified Mr. Barfield's headaches as one of his severe impairments. (R. 19). The ALJ also noted that Mr. Barfield suffered from rectal bleeding. (R. 24). Although the ALJ did not note that Dr. Kahn identified this issue, the ALJ noted a recurrence of rectal bleeding the following year. (R. 499). Notably, the subsequent evaluation was more detailed—and provided more information—than Dr. Kahn's impression of the rectal bleeding. (*Compare* R. 499 *with* R. 421). Because it is clear the ALJ did not omit Mr. Barfield's headaches

5

and rectal bleeding from her consideration of Mr. Barfield's claim, Mr. Barfield's argument fails.

*Whether Substantial Evidence Supported the ALJ's Finding that Mr. Barfield Could Perform Past Relevant Work*

Mr. Barfield next alleges that the ALJ did not make a factual finding about the demands of Mr. Barfield's past work and thus could not determine whether Mr. Barfield could still perform that work. The ALJ has "an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). Without evidence as to the demands of the claimant's past work, the ALJ "cannot properly determine whether the claimant has the residual functional capacity to perform his past relevant work" and has thus not fully developed the record. *Schnorr*, 816 F.2d at 581. But so long as the available evidence can "combine to paint a full picture of [the claimant's] past relevant work," the ALJ has fully developed the record. *Holder v. Soc. Sec. Admin.*, 771 F. App'x 896, 900 (11th Cir. 2019) (holding that the Work History Report, claimant's and vocational expert's testimonies, and DOT listing were sufficient evidence).

Here, the ALJ had enough evidence of the demands of Mr. Barfield's past work to determine whether Mr. Barfield could still perform that work. At the hearing, Mr. Barfield testified about his hours and the heaviest weight he lifted as a cook. The vocational expert also specifically stated that she had enough information

to classify Mr. Barfield's prior occupations. (R. 51). Further, a vocational expert does not have to "explicitly describe the tasks . . . [if] she classified each of these occupations . . . and referred the ALJ to the listings for those jobs in the . . . Dictionary of Occupational Titles." Holder v. Soc. Sec. Admin., 771 F. App'x 896, 900 (11th Cir. 2019). The ALJ did so here. (R. 51). Because the ALJ had access to a description of the demands of Mr. Barfield's past work, she adequately developed the record and was able to determine whether Mr. Barfield could perform that past work.

      C.      *Whether the ALJ Based Her Decision on Substantial Evidence*

Finally, Mr. Barfield argues that the ALJ did not base her decision on substantial evidence because the ALJ's hypothetical question to the vocational expert did not accurately state Mr. Barfield's limitations and impairments. To constitute substantial evidence, a hypothetical must "include or otherwise implicitly account for all of [the claimant's] impairments." *Winschel*, 631 F.3d at 1181. But the hypothetical does not need to include "each and every symptom of the claimant" and can properly omit symptoms that the medical record does not support. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007). *See also Beegle*, 482 F. App'x at 490 (holding that the ALJ properly omitted claimant's symptoms that were supported only by the claimant's own testimony where substantial evidence supports a contrary conclusion).

7

As an initial matter, Mr. Barfield does not identify any additional impairments or limitations that the ALJ should have included in the hypothetical question. Instead, Mr. Barfield simply copies and pastes the entire transcript with the vocational expert into the document and argues that "[w]hen the VE considered all of Claimant's limitations, he testified there was no work Claimant could perform." (Doc. 10 at 33). These additional limitations involved an individual who had to ice his neck frequently and an individual who had only "occasional use of the bilateral upper extremities for handling, fingering, and feeling." (R. 53-54).

Mr. Barfield's questions to the hypothetical included limitations supported only by his own testimony. The ALJ considered Mr. Barfield's testimony and found that the record and medical opinions did not support that his impairments were as severe or persistent as he testified. (R. 23). Dr. Kahn did not provide an opinion on Mr. Barfield's limitations. Dr. Iyer found that Mr. Barfield had some limitations in his ability to twist, carry, lift, and reach overhead. (R. 399). Dr. Iyer did not find any significant limitations involving "sitting, standing, walking, climbing steps, bending, handling, hearing, and speaking." (R. 399-400). Dr. Amason found that Mr. Barfield did not have any significant exertional limitations; no limitations in his ability to handle, finger, and feel; and only moderate restrictions in his ability to reach in any direction (finding that Mr. Barfield could only *frequently* reach overhead, rather than *constantly*). (R. 74–76).

The ALJ properly found that the medical record did not support Mr. Barfield's testimony about the intensity and severity of his symptoms. Therefore, the ALJ did not have to include those limitations in the hypothetical question. The ALJ also did not have to consider the answers to Mr. Barfield's hypotheticals that included those limitations. *See Beegle*, *Comm'r*, 482 F. App'x at 487 (holding that an ALJ "may disregard an answer to a hypothetical question where she finds that the elements of the hypothetical are unsupported by the record"). Accordingly, the court finds no error with the ALJ's reliance on the vocational expert's testimony.

## V.  CONCLUSION

For the reasons explained above, the court concludes that the Commissioner's decision is supported by substantial evidence and the Commissioner applied proper legal standards in reaching the determination. Therefore, the court **AFFIRMS** the Commissioner's final decision. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 23, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE